**IN THE UNITED STATES DISTRICT COURT** 04 AUG -3 AM 9: 54
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

ROGER CHARLES LANIER,     )
                               )
       Plaintiff,           )
                               )
v.                            )     CV 04-J-209-S
                               )
MORGAN COUNTY COMMISSION, et. al.,  )
                               )
       Defendants.      )

**ENTERED**
AUG 0 3 2004

### MEMORANDUM OF OPINION

On May 24, 2004, the magistrate judge entered a report and recommendation in this action filed pursuant to 42 U.S.C. § 1983, recommending that all claims against all defendants in their official capacities, plaintiff's Fourteenth Amendment claims[1] against all defendants, plaintiff's Eighth Amendment failure to protect claims against defendants Crabbe and Yates, and all fictitious party defendants and claims against them except those specifically set out in the referred claims below be DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1) and/or (2).

The magistrate judge recommended that the following claims be REFERRED to him for further proceedings: (1) plaintiff's Eighth Amendment failure to protect claims against defendant Wilson and against those John and Jane Doe(s) sheriff's department employees who saw, heard, or had personal knowledge that plaintiff was being attacked, or heard cries for assistance coming from the cell block at issue on February 4, 2002, but failed to respond, and (2) plaintiff's Eighth Amendment medical care claims against defendants Wilson, Jane Doe Nurse, and those John and Jane Doe(s) sheriff's department employees who denied plaintiff medical care.

On June 9, 2004, plaintiff filed objections to the report and recommendation. (Doc. 15). In said objections, plaintiff desires all claims against defendant Steve Crabbe be dismissed with prejudice

---

[1]   Except to the extent same is necessary to pursue plaintiff's Eighth Amendment claims.

because defendant Crabbe is deceased.  *Id.* at 1.   The provisions of Rule 25(d) provide that a public officer's successor is automatically substituted with respect to any official capacity claims against Crabbe.  However, Alabama Sheriffs are considered arms of the state and therefore are immune from suit in their official capacity under the Eleventh Amendment of the United States Constitution.  *See Marsh v. Butler County, Ala.*, 268 F.3d 1014 (11 th Cir. 2001).  Accordingly, any claims against Crabbe's successor, to the extent same are brought against the successor in his official capacity, are due to be dismissed.  Moreover, defendant Crabbe's death in 2002 occurred long before plaintiff filed his claim on January 12, 2004.[2]  Thus, all claims against defendant Crabbe are due to be dismissed with prejudice in accordance with the magistrate judge's report and recommendation and the additional factual circumstances and legal conclusions set out hereinabove.

Plaintiff also concedes that he has failed to state a claim against the Morgan County Commission and moves to waive all claims against said entity.  *Id.* at 3.  Thus, the claims against the Morgan County Commission are due to be dismissed with prejudice in accordance with the magistrate judge's report and recommendation.

Plaintiff does, however, object to dismissal of his failure to protect claims against Captain Yates.  Plaintiff directs the Court's attention to *John Maynor,  v.  Morgan County, Alabama, et. al.* (CV 01-C-851-NE), a class action civil rights lawsuit assigned to Honorable U.W. Clemon, Chief United States District Judge for the Northern District of Alabama.  On September 25, 2001, a consent decree was entered into between the Class Plaintiffs ("all present and future inmates of Morgan County Jail") and "the County defendants."  (Attached hereto as Exhibit A).  Said decree included an admission to and a contractual agreement to rectify numerous constitutional violations alleged by plaintiffs in their complaint.  (Attached hereto as Exhibit B).  In fact, some of the allegations in the

---

[2]  *See Bumpus v. Crabbe,* CV 01-B-904-S.  (Document #30), and plaintiff's complaint. (Document #2, at 2).

present action are identical to those in the *Maynor* complaint, particularly with regard to camera monitoring and communication systems. (Exhibit B, at 7-10)

Plaintiff argues defendant Yates was deliberately indifferent to his safety because she "should have had sweeps in the cell block for homemade weapons on February 2, 2002[,] and also randomly." (Document #15, at 3). Further, Yates "did not assign a deputy to watch the surveillance camera and if she did assign one she failed to properly supervise, direct or control the actions of her subordinate[s]." *Id.* Plaintiff concludes defendant Yates was aware of *Maynor*, and had knowledge of Morgan County Jail's "history of widespread abuse [and violence] that was obvious, flagrant, rampant and of continued duration." *Id.* The court finds that plaintiff's allegations, when viewed in the context of *Maynor*, do state a claim against defendant Yates for 28 U.S.C. § 1915A purposes. Thus, the magistrate judge's report and recommendation is due to be rejected to the extent it recommends dismissal of the failure to protect claims against Yates in her individual capacity.

The court also notes the fictitious party defendants attached to the failure to protect claims do not include any defendant Sheriff's Department employee who failed to follow known security measures and tasks assigned to them on the date of the incident. The allegations in plaintiff's complaint make it necessary to include these individuals as fictitious party defendants.

### Conclusion

Having carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation and the objections thereto, the Court is of the opinion that the magistrate judge's report is due to be and is hereby ADOPTED and the recommendation is ACCEPTED, with the exception of the failure to protect claims against defendant Yates in her individual capacity. Thus, the recommendation to dismiss the failure to protect claims against Yates in her individual capacity is due to be REJECTED. The adoption and acceptance of the report and

3

recommendation is also SUPPLEMENTED to reflect the death of defendant Crabbe, and clarify additional individuals identified as John and Jane Doe defendants in connection with plaintiff's failure to protect claims.

Therefore, all claims against all defendants in their official capacities, plaintiff's Fourteenth Amendment claims[3] against all defendants, all claims against defendant Crabbe, and all fictitious party defendants and the claims against them except those specifically set out in the referred claims below are due to be DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1) and/or (2).

The following claims are due to be REFERRED to the magistrate judge for further proceedings: (1) plaintiff's Eighth Amendment failure to protect claims against defendants Yates and Wilson, (2) plaintiff's Eighth Amendment failure to protect claims against those John and Jane Doe(s) sheriff's department employees who saw, heard, or had personal knowledge that plaintiff was being attacked, heard cries for assistance coming from the cell block at issue on February 4, 2002, but failed to respond, and those John and Jane Doe(s) employees who failed to comply with known security measures and tasks assigned to them on the date of the incident, (3) plaintiff's Eighth Amendment medical care claims against defendants Wilson, Jane Doe Nurse, and (4) plaintiff's Eighth Amendment medical care claims against those John and Jane Doe(s) sheriff's department employees who denied plaintiff medical care.

An appropriate order will be entered.

DATED this _3_ day of ___August___, 2004.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

---

[3]  Except to the extent same is necessary to pursue plaintiff's Eighth Amendment claims.

4

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA 01 SEP 25 PH 3:32
NORTHEASTERN DIVISION.

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| JOHNNY MAYNOR, ANTHONY MURPHREE, CHRISTOPHER NICHOLS, YVETTE BARBEE, JOSEPH BOWIE, JAMES BROWN, KELVIN COWAN, McARTHUR GREEN, KRISTY LEIGH GRIFFIN, CARRIE JACKSON, CLEVELAND OWENS, WILLIE PERRY, ALNAS RUSSELL, MAURICE SEARS, BILLY RAY SMITH, MICHAEL VAUGHN, individually and on behalf of all present and future inmates of the Morgan County Jail at Decatur, Alabama, <br><br>                   Plaintiffs, <br><br> vs. <br><br> MORGAN COUNTY, ALABAMA; STEVE CRABB, Sheriff of Morgan County, and MYRA YATES, Jail Administrator, in their official capacities; LARRY BENNICH, JEFF CLARK, DON STISHER, STACY GEORGE, and FAYE SPARKMAN, members of the MORGAN COUNTY COMMISSION, in their official capacities; DON SIEGELMAN, Governor of Alabama, and MIKE HALEY, Commissioner of the Alabama Department of Corrections, in their official capacities, <br><br>                   Defendants. | ENTERED <br> SEP 25 2001 <br><br><br> Civil Action Number <br><br> 01-0851-NE |

ENTERED

SEP 25 2001

## CONSENT DECREE APPLICABLE TO THE PLAINTIFF CLASS AND THE COUNTY DEFENDANTS

Based on the Court's careful review of the Proposed Consent Decree between the

Plaintiff class and the Defendants Morgan County Sheriff Steve Crabb, Morgan County Jail

Administrator  Myra Yates, the Morgan County Commission and its members Larry Bennich,

Jeff Clark, Don Sisher, Stacy George, and Faye Sparkman ('the County Defendants"), the lack of

meritorious objections thereto, and the fairness hearing of this date, the Court finds and concludes that the Proposed Consent Decree is fair, reasonable, and adequate. The Proposed Consent Decree is hereby FINALLY APPROVED.

Accordingly, the following provisions are hereby ORDERED by the Court.

**A.**   **Housing and Living Conditions**

1.     No inmate in the Morgan County Jail ("the Jail") shall be forced to sleep on the floor or on a table at any time.

2.     The cells known as "drunk tanks" shall be equipped to safely house inmates who are intoxicated at the time they are booked into the Jail. These cells shall only be used to house intoxicated inmates until they are sober and can be moved safely to the general population.

3.     Recognizing that overcrowding at the Jail affects all aspects of Jail operations, the County Defendants agree to organize a local task force to identify and review alternative programs and methods for reducing the Jail population and to make recommendations regarding the implementation of such programs and methods. The task force shall include, but is not limited to the following officers, if they agree to serve: the sheriff; one or more members of the County Commission; the presiding circuit court judge; the district attorney; the county attorney; a criminal defense attorney; a representative from probation; and at least two community representatives. The task force shall diligently investigate and explore alternative methods for reducing the Jail population, including the creation of a Community Corrections and Punishment Program, as provided for in §15-18-170, et seq., Code of Alabama, 1975; the expansion and development of one or more work release programs as now or hereafter authorized by law; the diversion of inmates to other institutions with available bed space; the release of inmates on their

2

personal recognizance; and other alternative means of securing their attendance through such other means and methods as may be available. In reviewing the possible alternatives for preventing overcrowding at the Jail, the task force will consult with the Alabama Association of Community Corrections. County Defendants will report to Plaintiffs' counsel each September 15 and March 15, and through other regular communications, regarding local efforts by the task force and others to prevent overcrowding at the Jail.

      4.      Defendants shall thoroughly and safely clean the entire Jail at least once a month, and shall ensure that the Jail continues to receive monthly pest control services. County Defendants shall respond promptly to pest control problems in the Jail. Defendants shall have the ventilation system at the Jail inspected for dirt, mold, and other growth; and, by December 31, 2001, shall have the air ducts cleaned, replaced or repaired by a qualified firm if the ducts contain levels of vermin, mold growth, dust and/or debris considered unacceptable according to the standards of the American Society of Heating, Refrigerating, and Air Conditioning Engineers (ASHRAE). County Defendants shall ensure that the air handling unit is on a regular maintenance program and that the air filters are being changed regularly. County Defendants shall have the heating, ventilation, and air conditioning (HVAC) system at the Jail inspected and evaluated regularly by a qualified environmental hygiene specialist, for compliance with ASHRAE standards. The Jail HVAC system shall then be maintained in accordance with the recommendations of the specialist. On a daily basis, inmates shall be provided with cleaning supplies, including brushes for the toilet and the shower, a mop, sponges, and a bucket with clean hot water and detergent. The Class recognizes that Class members are jointly responsible with the Jail staff for cleanliness of the cellblock and maintaining a decent living environment.

3

5.       County Defendants shall furnish all inmates with a clean mattress, sheet, blanket, and towel upon intake, and shall furnish clean sheets, blankets, and towels once a week. All inmates shall be provided with an adequate supply of hygiene products which shall include toothbrush, toothpaste, deodorant, soap, and shampoo free of charge. County Defendants shall provide each inmate two clean uniforms. Mattresses shall be in reasonably good condition, and shall be sanitized and aired between users. Effective October 31, 2001, all inmates shall have access to the jail store at least once per week. County Defendants shall furnish each inmate a pen or some other writing instrument at intake and no less than once every 10 days thereafter. Under no circumstances shall inmates be denied access to over-the-counter medication or hygiene items as a form of punishment.

6.       Effective October 31, 2001, County Defendants shall provide an opportunity for no less than one hour per day, three days per week of outdoor exercise for every inmate during daylight hours, except in inclement weather or emergency situations. In the event that the Jail creates a bona fide indoor exercise facility, exercise may be provided in such a facility so long as at least one day of exercise remains outdoors. Denial of exercise shall not be used for punishment, except that those who violate the Sheriff's reasonable rules of behavior may be returned to their cells prior to the end of the exercise period.

7.       Effective October 31, 2001, County Defendants shall provide at least five hours of visitation each Saturday or Sunday as determined by the Sheriff, for family and loved ones 14 years of age or older, to visit inmates who have been in Jail for no less than seven consecutive days ("eligible inmates"). County Defendants will assure an orderly and safe visitation period by designating 30 minute periods of one-on-one visitation (i.e. one inmate to each visitation port for

4

the thirty-minute period) in a fair and equitable manner for all eligible inmates desiring to visit with family and loved ones, and who (and whose visitors) comply with the Sheriff's written reasonable rules and regulations regarding visitation. All inmates shall be allowed at least three visits with family and loved ones each month. Family and loved ones will not be barred from visitation for having been incarcerated at the Jail so long as that incarceration ended more than 12 months prior to the scheduled visitation. No inmate may have more than two visitors per week. Visitors between the ages of 14 and 18 must be accompanied by an adult, and must be a member of the inmate's immediate family.

8. Beginning no later than January 1, 2002, to the extent permitted by the State Fire Marshal, inmates may obtain and keep a reasonable number of soft-cover books and periodicals sent to them directly from the publisher, or otherwise made available to them by jail staff, such as from a book cart or jail library. Sexually explicit or racially inflammatory materials shall be prohibited. All incoming books and periodicals will be screened to determine if they are sexually explicit or racially inflammatory.

9. County Defendants shall keep the Jail temperature between 65 degrees and 85 degrees Fahrenheit, provide adequate ventilation, and maintain adequate lighting in all living areas. Adequate lighting shall be defined to be 25 foot candles in all living areas, including the one-man cells on the third floor of the jail, and shall be implemented no later than December 31, 2001.

10. The County Defendants commit to move diligently to design, construct and occupy a new County Jail facility, and shall immediately begin studies and formulate plans for the funding for construction of the new Jail. The Jail will be designed and constructed so as to

5

assure that the health, safety, and welfare of the inmates are adequately provided for. The County Defendants commit to have the construction complete and facility certified fit for occupancy on or before October 1, 2005. Nothing provided herein shall prevent the County Defendants from utilizing all or a portion of the existing Jail facility as a portion of the new Jail facility, so long as the facility adequately assures the health, safety, and welfare of the inmates.

**B.     Health Care and Diet**

11.     County Defendants shall provide and pay for all constitutionally required health care in a timely manner. This provision does not prevent the Jail from implementing a written co-pay plan, which requires inmates to pay a limited fee, in a pre-set amount, toward the cost of their medical treatment. For example, the plan might provide that inmates will be charged $3, or some other reasonable amount, toward each 30-day refill of a prescription medication. Payments may be withdrawn from the inmate's Jail store account so long as the Jail store account does not fall below $20. Under no circumstances shall an inmates' financial status prevent him or her from receiving constitutionally required medical, mental health, and dental care, including necessary medication and hospitalization, in a timely manner.

12.     Inmates shall be screened in a face to face interview by officers upon arrival at the Jail, or as soon thereafter as the inmate is physically or mentally able to do so, and before their placement in general population. Officers will be instructed by a qualified health care practitioner on the proper use of the health screening forms before they conduct interviews. The health screening form shall be mutually agreeable to Plaintiffs' and County Defendants' counsel.

13.     Intake findings shall be recorded on a Health Screening Form and reviewed within one (1) day by a qualified health care practitioner. The screening form, along with medical

6

examinations, medication records (which shall include at a minimum the medication prescribed for each inmate, the dosage, and the date of administration), sick call requests, out-patient medical visits, emergency room referrals, treatment and directions for any follow-up, and treatment plans for inmates with chronic medical conditions (including chronic mental illnesses) shall systematically be kept as part of each inmate's confidential medical file.

14.     If, during intake screening an inmate indicates that he or she has a chronic or acute medical condition, referral will be made promptly to the medical staff. The medical staff will complete the screening process, gather medical history, and verify any current medication, which the inmate identifies that he or she is taking. The medical staff will request that the inmate sign a release of information to confirm any medication or treatment currently ordered. Medication or ongoing treatment which are credibly verified shall be continued without interruption and shall be referred to the Jail's Medical Director for orders to thereafter continue or alter as deemed appropriate by the medical director. The final decision to continue or discontinue, or modify treatment or medication shall rest with the Medical Director of the Jail, consistent with the community standard of care. The Medical Director's decision to continue, discontinue, or modify the inmate's treatment, and the reasons for this decision, shall be documented in the inmate's medical record.

15.     If, during intake screening, an inmate indicates that he or she has a chronic or acute medical condition during such time as the Jail's medical staff is not physically present, the correctional staff will contact promptly the on-call nurse or the Jail's Medical Director to determine what medical care or medication is appropriate, consistent with the community standard of care for the inmate's medical condition, until the inmate may be personally seen by

7

the jail medical staff the next morning. If, for any reason, correctional officers are unable immediately to contact the on-call nurse or the Jail's Medical Director with regard to any person with an acute or chronic illness and the situation is emergent, the inmate will be transported immediately to the appropriate emergency room for care and treatment.

16.     If, during intake screening, an inmate states that he or she is on medication for a chronic or acute illness and the medication cannot be verified within 24 hours of intake, then, within the next 24 hours, the inmate will be seen by a physician who shall continue the inmate's prescription, or in the alternative, order other treatment for the inmate consistent with the community standard of care for the inmate's condition. The inmate shall receive the first dose of the medication prescribed by this physician within the second 24-hour period (in other words, within 48 hours of intake). The physician's decision to continue, discontinue, or modify the inmate's treatment, and the reasons for this decision, shall be documented in the inmate's medical record.

17.     Inmates whose constitutionally required treatment includes testing of blood pressure, blood sugar, or any other medically necessary testing, shall be provided such testing in accordance with the standard of care for their medical condition.

18.     Inmates who indicate through the intake screening or who appear to be suffering from serious mental illness, including suicidal tendencies, shall be seen promptly by a qualified mental health specialist for diagnosis and appropriate and ongoing treatment. County Defendants shall develop a written plan which ensures that inmates with mental illness are seen promptly by qualified mental health specialists.

19.     Each inmate held in the Jail more than fourteen (14) days shall by the fourteenth

8

day be given a basic physical examination which includes, at a minimum, the taking of vital signs (blood pressure, pulse, height, weight, and temperature), a complete health history, and tests for tuberculosis, HIV, and syphilis.  The examination must be conducted by a qualified health care practitioner.  County Defendants shall ensure that tuberculosis skin tests are read 48-72 hours after they are implanted, and that anyone with a positive skin test is provided a chest x-ray within 96 hours.  County Defendants shall immediately contact local health officials regarding any individual with a suspicion of contagious tuberculosis.

20.     If an inmate needs constitutionally required medical treatment or review that cannot be provided at the Jail, including emergency care, County Defendants shall transport the inmate to obtain such treatment in a timely manner.  County Defendants shall make arrangements with local health care facilities, including emergency rooms, to ensure that no inmate is refused constitutionally required treatment or care because of inability to pay.

21.     County Defendants shall implement a regular sick call to be conducted by qualified health care  practitioner at least five (5) times a week.  The sick call shall include a simple procedure for inmates to make written requests to be seen at the next sick call in a confidential visit by the qualified health care practitioner.  Security personnel shall not have the authority to deny a request for medical, mental health, or dental care.  Qualified health care practitioners shall be on call when not available on-site.

22.     County Defendants shall provide a nutritionally adequate diet to inmates, and shall consult with a registered dietician to review and approve all menus actually served at the Jail.  Food provided to inmates shall not be withheld, reduced, or altered as a form of punishment.  County Defendants shall provide therapeutic diets when such diets are prescribed

9

by a physician or dentist as part of the patient's treatment.

23.     County Defendants shall provide safe and medically appropriate detoxification for inmates under the influence of alcohol or drugs or undergoing withdrawal. Inmates experiencing life-threatening intoxication, overdose, or withdrawal shall be immediately transferred to an emergency care facility.

24.     Inmates confined in the Jail's observation cell shall be provided with a mattress, bedding, and clothing unless the inmate is at risk of harming himself or herself with those items. Inmates who are deemed to be at risk of harming themselves shall be provided an isolation/suicide cell smock. The observation cell shall be used for suicide watch, detoxification, and to isolate individuals at risk of harming themselves or others. When the cell is to be used for medical observation, including when it is used for detoxification or when a hospital or other medical provider has directed that an inmate's condition be closely watched (such as after the inmate has suffered a head trauma), the inmate must monitored by a correctional officer in consultation with a qualified health care practitioner. The observation cell shall not be used for punishment. Force, including chemical agents, shall not be used on an inmate confined in an observation cell, except when necessary to protect the inmate from harming himself or herself or others, and then only after other reasonable methods for controlling the inmate have failed. Persons in the observation cell shall be checked every fifteen (15) minutes by trained Jail staff, and such checks shall be documented. Jail staff shall also document when they allow the inmate in the observation cell to shower or use the toilet.

**C.     Security and Fire Safety**

25.     Detention officers shall visually inspect each cellblock in the Jail at least once

10

every thirty minutes. All checks shall be documented. Effective October 31, 2001, at least one officer shall be stationed on each floor of the main Jail and two officers shall be stationed in the control room at all times. One officer shall be stationed at the Annex when any inmates are actually there. In addition, at least two (2) rovers shall be on duty at all times.

26.     All officers in supervisory positions shall attend and complete the 80-hour Jail Management Training course conducted by the Alabama Department of Corrections at the Alabama Corrections Academy within the next 6 months, and all other detention officers shall receive at least 12 hours of formal training within the next 6 months.

27.     Uses of force by detention officers, including but not limited to the use of chemical agents, shall be reviewed within one (1) day or on the next business day (if the use of force occurs on the weekend) by the Jail administrator or warden, who shall counsel and, when appropriate, discipline any officer who is determined to have used force excessively or improperly. Use-of-force records, including all inmate or staff allegations or complaints regarding use of force and any determinations regarding whether that use of force was appropriate, shall be systematically kept and filed. Force, including chemical munitions, shall not be used except to prevent an inmate from causing bodily harm or physical injury to himself or to another, or to escape, and only when there is no other reasonable means for controlling the inmate. All current staff shall receive training in the proper use of force, including chemical munitions, within two months of entry of this order, and on an annual basis thereafter. All future staff shall receive training in the proper use of chemical munitions within 30 days of their employment with the Sheriff's Department and on an annual basis thereafter.

28.     No later than September 1, 2001, County Defendants shall implement an adequate

11

communication system for use in the Jail. A communication system shall be considered adequate only if it allows inmates, including those in the annex and single-man cells, to immediately notify detention officials of emergencies and the nature of the emergency, and only if officers respond in a timely and appropriate manner.

29.     By September 1, 2001, and on an annual basis thereafter, all current staff shall receive training in the recognition of mentally ill and emotionally unstable individuals, including recognition of signs and symptoms of chemical dependency and suicidal tendencies. In addition, by September 1, 2001 and on an annual basis thereafter, all current staff shall receive training in defusing and safely handling volatile situations involving such individuals. All future staff shall receive the training described in this paragraph within 30 days of their employment with the Sheriff's Department, and on an annual basis thereafter.

30.     A first aid kit approved by the designated physician shall be available in the Jail. All Jail personnel, within 30 days of employment, and annually thereafter, shall have current training in basic first aid and cardiopulmonary resuscitation (CPR) equivalent to that defined by the American Red Cross. At all times, there shall be at least two Jail staff members on-site at the Jail who have current training in basic first aid and CPR.

31.     County Defendants shall repair all non-structural deficiencies described in the September 25, 2000, State Fire Marshal's Report, and shall have the fire alarms, smoke detectors, and manual fire alarm systems in good working order by December 31, 2001. Structural deficiencies will be adequately addressed by the County Defendants when the new Jail is designed, built, and occupied.

12

**D.     Access to the Courts**

32.     County Defendants shall implement  by September 30, 2001 a formal grievance procedure that is mutually agreeable to Plaintiffs and County Defendants' counsel.

33.     County Defendants shall obtain and make available at least 2 sets of the *Offenses and Defenses in Alabama*, Harrison Co. (3d Ed. 1999),  *Alabama Criminal Trial Practice Forms*, Harrison Co. (3d Ed. 1993), the *Georgetown Law Journal Annual Review of Criminal Procedure* (2001), the *Alabama Code Annotated*, Title 13A (Criminal Code), *Legal Research:  How to Find and Understand the Law*, Nolo Press (4th edition, 1995), and *Prisoners' Self-Help Litigation Manual,* Ocean Publications, 3rd edition, 1995, and shall, upon request for specifically identified legal materials and the prepayment of the estimated reasonable cost of copying such, supply the inmate with photocopies of the specifically identified legal materials.  County Defendants shall also accept donations of legal materials to the Jail received from Plaintiffs' counsel for use by inmates; subject to reasonable limitations on the quantity of such materials.  The Class recognizes that Class members are jointly responsible for the proper care of the reference books, and County Defendants shall not be required to replace any of the above legal materials which are damaged by inmates in whole or in part.

**E.     Attorneys' Fees**

34.     County Defendants shall pay the reasonable fees and expenses of the Plaintiffs' attorneys and support personnel, subject to the fee limitations contained in the Prison Litigation Reform Act, which, on the date of the signing of this agreement is $79,043.09.  This does not prevent Plaintiffs' counsel from seeking future fees and costs that are directly and reasonably incurred in enforcing the relief ordered for the violation of Plaintiffs' rights under this Consent

13

Decree, subject to the fee limitations contained in the Prison Litigation Reform Act.

35. If the Court orders payment from State Defendants for fees and expenses that have already been paid for by the County Defendants, Plaintiffs' attorneys shall reimburse County Defendants of such amount.

**F.   Notice**

36. Within ten (10) days of the entry of this order, Defendant Steve Crabbe shall explain the terms of this Consent Decree to all of his agents, servants, representatives, and employees in any way connected with the subject matter of this suit, in order to ensure their understanding of this Consent Decree and the necessity for strict compliance with its terms. County Defendants shall require strict compliance with this Consent Decree by all such persons and their successors. All Jail staff members and other individuals providing services required by this Consent Decree shall read this Consent Decree within ten (10) days of the date of its entry or within ten (10) days of being hired, whichever comes later; and shall acknowledge in writing that they have read and understood what is required of them.

37. The Jail's Inmate Handbook shall advise inmates that the Jail is being operated under the terms of an order entered by the United States District Court for the Northern District of Alabama and that, within a reasonable time after request, any inmate will be afforded the opportunity to read a complete copy of the Consent Decree.

14

### G.    Compliance

38.    To ensure compliance with this agreement, County Defendants shall provide to Plaintiffs' counsel each month a complete and up-to-date census of the Jail population that lists inmates by location, status (awaiting trial, state convicted, or county convicted), all criminal charges, and length of confinement.  County Defendants shall also provide to Plaintiffs' counsel on a quarterly basis a complete and up-to-date security staffing report that includes staff names and assignments.

39.    On a monthly basis for the first year after the effective date of this order, and on a quarterly basis thereafter, County Defendants shall provide to Plaintiffs' Counsel the physician sick call schedule for the previous month, including the name of each physician who worked, the actual days he or she was present at the Jail, the actual number of hours he or she spent at the Jail on each of these days, and how many patients he or she treated on each of these days.  County Defendants shall provide this information with regard to on-site visits by the psychiatrist and psychiatric social worker and any other specialist who provides care on-site at the Jail, as well. The nursing schedule for the previous month, including the name of each nurse who worked, his or her qualifications (i.e., RN), the days and hours he or she actually worked, and the number of patients he or she saw on each day worked.

40.    Plaintiffs' counsel shall have reasonable access to Jail records, Jail inmates, and the Jail facility, including escorted, unannounced walk-through visits of the Jail on a quarterly basis during the first year following the entry of this Consent Decree, and twice a year thereafter. Paralegals working directly with Plaintiffs' counsel shall have reasonable access to Jail inmates and will be accompanied by an attorney during any walk-through of the Jail.  Class counsel and

15

their paralegals may bring experts at their own expense on such walk-through visits. Should class counsel or their paralegals bring a medical expert, the medical expert shall have access to all medical records and charts kept or created by the Jail. This Consent Decree does not prevent County Defendants from changing the medical providers who provide services at the Jail.

41.     Prior to filing a motion with the Court for legal enforcement of the Consent Decree, Plaintiffs' counsel will bring any alleged deficiencies to the attention of County Defendants' counsel and allow the County Defendants a reasonable period of time to resolve the issues informally. If the issues cannot be resolved through negotiation, the Court may appoint a qualified, neutral individual with sufficient expertise to evaluate and report to the Court the County Defendants' compliance with part or all of the Consent Decree. The County Defendants shall be entitled to notice and an opportunity to be heard prior to the imposition of sanctions based on such report.

**H.      Scope of Relief**

42.     The provisions of the Consent Decree are not binding on the Defendants Mike Haley , Commissioner of the Alabama Department of Corrections, and Governor Don Siegelman ("the State Defendants").

**I.      Definitions**

43.     The term "detention officer" refers to any member of the Jail staff, exclusive of kitchen staff and medical staff, who is hired by Morgan County, and charged with the duties of those persons commonly referred to as jailers, guards, or correctional officers (including supervisors). This term includes reserve officers, the Jail administrator, and the warden.

44.     The term "qualified health care practitioner" refers to a registered nurse, nurse

16

practitioner, physician's assistant, or medical doctor.

45.    The term "Jail" refers to the main jail attached to the Morgan County
Courthouse in downtown Decatur, the "annex" across the street from the main jail, which
currently holds approximately 40 male trustees; and any other facility hereafter used by the
Morgan County Sheriff for housing Morgan County inmates.

**I.    Stipulations and Findings.**

46.    The parties stipulate that the prospective relief concerning the housing and living
conditions, as set forth in Paragraphs 1 through 10 of this Consent Decree, is narrowly drawn,
extends no further than necessary to correct the violations of plaintiffs' federal rights set forth in
their Complaint and is the least intrusive means necessary to correct these violations.  The parties
agree and stipulate, and the Court hereby finds, that this Consent Decree will not have an adverse
impact on public safety or the operation of a criminal justice system.  Accordingly, the parties
agree and stipulate, and the Court hereby finds, that this Consent Decree complies in all respects
with the provisions of 18 U.S.C. §3626(a).

47.    The parties agree and stipulate that the prospective relief concerning the safety
and security of inmates, as set forth in Paragraphs 25 through 31 of this Consent Decree, is
narrowly drawn, extends no further than necessary to correct the violations of Plaintiffs' federal
rights set forth in their Complaint and is the least intrusive means necessary to correct these
violations.  The parties agree and stipulate, and the Court hereby finds, that this Consent Decree
will not have an adverse impact on public safety or the operation of a criminal justice system.
Accordingly, the parties agree and stipulate, and the Court hereby finds, that this Consent Decree
complies in all respects with the provisions of 18 U.S.C. §3626(a).

17

48.     The parties agree and stipulate that the prospective relief concerning the medical care of inmates, as set forth in Paragraphs 11 through 24 of this Consent Decree, is narrowly drawn, extends no further than necessary to correct the violations of Plaintiffs' federal rights set forth in their Complaint and is the least intrusive means necessary to correct these violations. The parties agree and stipulate, and the Court hereby finds, that this Consent Decree will not have an adverse impact on public safety or the operation of a criminal justice system. Accordingly, the parties agree and stipulate, and the Court hereby finds, that this Consent Decree complies in all respects with the provisions of 18 U.S.C. §3626(a).

49.     The relief provided for in this Order replaces and supersedes the relief granted by all prior orders in this proceeding, including the relief granted in the Court's Preliminary Injunction of April 17, 2001.

50.     The requirements of paragraphs 1, 2, 6, and 7 shall not be in effect whenever more than 25% of the Jail population consists of state-ready inmates, as the term is defined by the Court. However, the opportunity for exercise shall never fall below one day per week for one hour.

Done this _____ day of September, 2001.


_____
Chief United States District Judge
U.W. Clemon


18

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHNNY MAYNOR, Anthony Murphree, | ) | |
| Christopher Nichols,  Yvette Barbee, | ) | |
| Joseph Bowie,  James Brown, Kelvin | ) | |
| Cowan, McArthur Green, Kristy Leigh | ) | |
| Griffin, Carrie Jackson, Cleveland | ) | |
| Owens, Willie Perry, Alnas Russell, | ) | |
| Maurice Sears, Billy Ray Smith, | ) | |
| Michael Vaughn, individually | ) | |
| and on behalf of all present and | ) | |
| future inmates in the Morgan County | ) | |
| Jail in Decatur, Alabama, | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | CV-01-C-0851-NE |
| | ) | |
| MORGAN COUNTY, ALABAMA; | ) | CLASS ACTION |
| STEVE CRABBE, Sheriff of Morgan | ) | |
| County, and MYRA YATES, Jail | ) | |
| Administrator, in their official capacities; | ) | |
| Larry Bennich, Jeff Clark, Don Stisher, | ) | |
| Stacy George, and Faye Sparkman, | ) | |
| members of the MORGAN COUNTY | ) | |
| COMMISSION, in their official capacities; | ) | |
| DON SIEGELMAN, Governor of | ) | |
| Alabama, and MIKE HALEY, | ) | |
| Commissioner of the Alabama | ) | |
| Department of Corrections, in their | ) | |
| official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## I. INTRODUCTION

1.     Plaintiffs bring this class action lawsuit on behalf of all inmates, convicted persons

and pretrial detainees, who are now or in the future will be confined in the Morgan County Jail in

Decatur, Alabama (hereinafter "the Jail"). Plaintiffs challenge the inhumane treatment and conditions of confinement that they suffer at the Jail, including: gross overcrowding; deficient sanitation, ventilation, lighting, plumbing, fire safety, and other physical conditions; inadequate classification, staffing, and supervision; denial of exercise; inadequate food service; denial of medical care, including dental and mental health care; denial of access to courts; and other serious deficiencies as set forth in this Complaint.

2.      The named plaintiffs, individually and on behalf of the plaintiff class, seek declaratory and injunctive relief against defendants on the grounds that the conditions, practices, policies, and treatment of persons confined in the Jail deprive plaintiffs of the rights guaranteed to them by the First, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

## II. JURISDICTION

3.      This suit is brought under the First, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983. Jurisdiction over plaintiffs' claims is conferred on this Court by 28 U.S.C. §§ 1331 and 1343(a)(3).

4.      This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

## III. VENUE

5.      The Northern District of Alabama is an appropriate venue for this action under 28 U.S.C. § 1391(b)(1) because defendants in their official capacity reside in this district.  See also 28 U.S.C. § 1392(a).  The Northern District of Alabama is also an appropriate venue under 28 U.S.C. § 1391(b)(2) because a "substantial part of the events or omissions giving rise to the claim[s] occurred" in this district.

2

## IV.  PARTIES

6.      Plaintiff Yvette Barbee, a United States citizen, has been confined in the Jail since February 2001.  She is a pretrial detainee.  She is housed in Cell 2A.

7.      Plaintiff Joesph Marcus Bowie, a United States citizen, has been confined in the Jail since January 2001.  He is a pretrial detainee.  He is housed in Cell 2B.

8.      Plaintiff James Frederick Brown, a United States citizen, has been confined in the Jail since December 1, 2000.  He is pretrial detainee.  He is housed in Cell 3A.

9.      Plaintiff Kelvin Cowan, a United States citizen, has been confined in the Jail since November 13, 2000.  He has been convicted and is awaiting transfer to a state facility.  He is held in Cell 2B.

10.      Plaintiff McArthur Green, a United States citizen, has been sentenced to serve nine (9) months confinement in the Jail for probation violation. He is held in Cell 3B.

11.      Plaintiff Kristy Leigh Griffin, a United States citizen, has been confined in the Jail since January 8, 2001.  She is held in Cell 2A.

12.      Plaintiff Carrie Jackson, a United States citizen, has been confined in the Jail since February 2001.  She is a pretrial detainee.  She is held in Cell 2A.

13.      Plaintiff Johnny Maynor, a United States citizen, has been confined in the Jail since November 2000.  He is a pretrial detainee.  He is held in Cell 3D.

14.      Plaintiff Anthony Murphree, a United States citizen, has been confined in the Jail since December 12, 2000.  He has been sentenced and is awaiting transfer to a state facility.  He is held in Cell 3D.

3

15.     Plaintiff Christopher Nichols, a United States citizen, has been confined in the Jail since December 2000.  He has been sentenced and is awaiting transfer to a state facility.  He is held in Cell 3D.

16.     Plaintiff Cleveland Owens, a United States citizen, has been confined in the Jail since January 8, 2001 for failure to appear at his court date.  He is held in Cell 3C.

17.     Plaintiff Willie Perry, a United States citizen, has been confined in the Jail since September 2000.  He has been sentenced and is awaiting transfer to a state facility.

18.     Plaintiff Alnas Russell, a United States citizen, has been confined in the Jail since January 24, 2001, when he was 16 years old.  He is a pretrial detainee.  He is held in Cell 3B.

19.     Maurice Sears, a United States citizen, has been confined in the Jail since May 2000.  He has been sentenced and is awaiting transfer to a state facility.  He is held in Cell 3A.

20.     Billy Ray Smith, a United States citizen, has been confined in the Jail for approximately one year.  He is a pretrial detainee.  He is held in Cell 2C.

21.     Defendant Captain Myra Yates is sued in her official capacity as Captain and Jail Administrator of the Morgan County Jail.  Captain Yates has responsibility for the daily functioning of the Jail, and is a final policymaker for Morgan County with respect to the Jail's operation.

22.     Defendant Steven Crabbe is sued in his official capacity as Sheriff of Morgan County.  As Sheriff, Crabbe oversees the general operation of the Jail.  He is responsible under state law for the Jail's general supervision and control.  See Ala. Code §§ 11-14-21, 14-6-1, 14-6-8, 14-6-17, 14-6-19, 14-6-21, 14-6-40, 14-6-94, 14-6-95, 14-6-96, 14-6-97 (1975).  Under state law, Sheriff Crabbe is a final policymaker for the State of Alabama with respect to the operation of the Morgan County Jail.

4

23.     Defendant Morgan County, Alabama ("County") is a political subdivision of the State of Alabama. Defendant Morgan County Commission is responsible under state law for properly maintaining the jail and funding the operation, administration, and maintenance of the Jail. See Ala. Code §§ 11-12-14, 11-12-15(a)(1), 11-14-9, 11-14-10, 11-16-28 (1975). Defendants Larry Bennich, Jeff Clark, Don Stisher, Stacy George, and Faye Sparkman are sued in their official capacity as members of the Morgan County Commission.

24.     Defendant Don Siegelman ("Siegelman") is sued in his official capacity as the Governor of Alabama. As Governor, Siegelman has authority to exercise "all functions and duties of the department [of corrections] . . . acting by himself or by and through such administrative divisions or such officers or employees or individuals as he may designate." Ala. Code §§ 14-1-17, 14-1-1.1. The Governor also exercises authority over the State budget.

25.     Defendant Mike Haley ("Haley") is sued in his official capacity as the Commissioner of the Alabama Department of Corrections. As Commissioner, Haley is responsible under state law for "inspect[ing] as often as may be deemed necessary" the Morgan County Jail, and for "aid[ing] in securing the just, humane and economic management" of the Jail. Ala. Code § 14-1-8 (a)(3). State law also mandates that the Commissioner "require the erection of sanitary accommodations of the inmates in [the county jail]," and "investigate the management [of the county jail] and the conduct and efficiency of the officers or persons charged with [the jail's] management." Ala. Code §§ 14-1-8 (a)(4), (5). Finally, state law requires the Commissioner to "promulgate such rules and regulations necessary to hygeine, sanitation, cleanliness, healthfulness, feeding of prisoners, management, and security of all prisons and jails." Ala. Code § 14-1-8 (a)(6).

5

## V.  CLASS ACTION ALLEGATIONS

26.     Plaintiffs bring this action on behalf of themselves and on behalf of all others who are similarly situated pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure. The class consists of all persons who are now or will be in the future confined in the Morgan County Jail, including both convicted persons and pretrial detainees.

27.     The class is so numerous that joinder of all members is impracticable.  According to the Alabama Department of Corrections, the Jail's rated capacity is ninety (96) inmates, with an additional 40 confined in the Jail's "Annex".  Its population changes daily as inmates are detained, committed, transferred, or released.  During the course of each year, therefore, hundreds of inmates are housed at the Jail.

28.     There are questions of law and fact common to the class.  These include the nature and constitutionality of conditions, practices, policies, and treatment of persons confined in the Jail.

29.     The conditions, policies, practices, and treatment challenged in this action apply with equal force to the named plaintiffs and all members of the class so that the claims of the named plaintiffs are typical of those of the class.

30.     The named plaintiffs will fairly and adequate represent the interests of the class. They possess the requisite personal interest in the subject matter of the lawsuit.  They are represented by a law office that is experienced in class action litigation involving jail and prison conditions.

31.    Defendants have acted and refused to act on grounds generally applicable to the class, thereby making appropriate final declaratory and injunctive relief with respect to the class as a whole.

## VI. FACTUAL ALLEGATIONS

32.    The Jail structure is inadequate for its current purpose and is maintained in a condition, which is unhealthy and unsafe to both the inmates and Sheriff's Department personnel. Living conditions at the Jail, which is an old and antiquated facility, are abysmal. The design of the Jail is such that it is impossible to properly monitor and control the activities of the inmates contained therein. Floors, walls, ceilings, bunks, toilet facilities, and showers are covered with filth. There are hairballs on the floor. There is a lack of temperature control in the facility and inmates are subjected to widely fluctuating temperatures, which is detrimental to the health of the inmates. The facility is not fit for human habitation. The cell sizes are inadequate and there are an insufficient number of emergency exits. A recent State Fire Marshall's report shows numerous Code violations based on the design of the facility. The Jail does not employ janitorial personnel, and inmates are not provided with adequate supplies to clean the facilities themselves. The cells have very little, if any, natural light. Shower facilities in the men's section of the Jail are inadequate; as a result inmates are not able to shower on a regular basis. The cells are infested with ants and spiders.

33.    The Jail facility is perennially overcrowded. The Jail facility is designed to house a total of 96 inmates. There is an auxiliary facility, not designed to be a jail, which is currently being utilized to house additional inmates, i.e. trustees. This building can accommodate approximately 40 inmates but is inadequate for the purpose for which it is being used. There is little or

7

no supervision at either the Jail or the outbuilding.  The Jail population at the time of the filing of this complaint was _____ inmates and because of overcrowding, _____ inmates are required to sleep on tables and on the floor, including sleeping underneath a bunkbed and in the corridors, which prevents the movement of jailors or inmates in the event of an emergency.  Some inmates sleep on the floor within just a couple of feet of the commode or shower.  Up to twenty men sleep in each of the drunk tanks, on benches and on the floor.  The drunk tanks have very little light, and sometimes the floors are covered with standing water.

34.     The conditions in the Jail pose a serious hazard to the health and safety of the inmates in the event of fire.  Smoke detectors, fire alarms, sprinkler systems, and fire extinguishers are substandard or lacking altogether.  The inmates are not informed of any fire evacuation plan, if one even exists.  The cells contain flammable bedding and other materials.  All locking devices are ancient.  This fact, in concert with over crowded conditions at the Jail, lack of sufficient staff, and narrow passageways makes it very likely that a fire in the Jail would cause substantial injury and possible loss of life to some or all the inmates housed therein.

35.     The inadequate funding of the Jail by the Commission has resulted in not only a lack of personnel to oversee the inmates' care and needs but also those persons who are hired to perform these duties have inadequate formal training in the types of skills needed to control such a large population of inmates, if indeed the current number of personnel could ever properly control such a large population of inmates in such a volatile situation.

36.     The design of the Jail is such that narrow corridors and lack of exits prevent orderly and safe evacuation of the Jail in the event of fire, riot, or other emergency.

8

37.     Neither defendant Crabbe his deputies, the jailers, nor the inmate trustees have been formally trained to detect mental illness or to handle mentally ill persons, despite the fact that mentally ill persons are often committed to the Jail.  Any on-the-job training that is provided to personnel in the handling of intoxicated or mentally ill persons, or in detecting mental illness, is done by Crabbe or one of his deputies, none of whom have been formally trained to handle these types of cases.

38.     The ventilation in some parts of the Jail is totally inadequate and the air is fetid and malodorous.  This poses a real, immediate, and substantial threat of harm to the inmates.

39.     The communication system of the Jail is totally inadequate.  It consists of a video camera and transmitter system located in the cards of the jail. Inmates can not activate the system to communicate an emergency to the jail personnel.  Inmates communicate with staff personnel by covering up the video camera or by banging on the walls of the Jail.  Where there are communication devices between the cells and the jailer, these devices are inadequate.  When calls go through from the inmates to the jailer either via the banging or over the transmitter system, these calls are often ignored by the jailer.

40.     There are an inadequate number of persons employed at the Jail to provide adequate security and supervision of the inmates.  Officers do not visually inspect the cells with sufficient frequency, and very rarely enter the cells.  On the weekends, there are only three personnel available to run the entire jail including the oversight of all inmates and other jail responsibilities.  There is inadequate supervision of the female prisoners, including the absence of a female jailor at various times during the week.

9

41.     There is no organized recreation for inmates in the Jail.  Time in the exercise yard
is allowed on very rare occasions, and there is no schedule for such recreation and time outside of
the Jail building.  While there is a facility for outdoor recreation, staffing problems and the whim
of the Sheriff control the use of these outside facilities.

42.     There are no educational or rehabilitation programs offered at the Jail.

43.     The inmates are permitted visitation only once per month and under such condi-
tions as to make the visitors feel like they are inmates and are being punished.

44.     There is no classification system at the Jail.  Persons held pending trial are treated
no differently than convicted persons.  Mentally ill inmates are not identified and kept separate
from other inmates.  Nor are juveniles or inmates with contagious diseases such as venereal
disease and tuberculosis.  Misdemeanants and pretrial detainees are housed in the same cells with
felons.

45.     Inmates are not allowed to attend religious services inside or outside the Jail.  The
only religious guidance provided to the Plaintiffs and the other inmates is provided on a sporadic
basis by the inmates themselves.  In addition, Plaintiffs and other inmates are not consulted about
their religious needs by Sheriff's Department personnel.

46.     The Jail does not have a facility for housing legal materials nor does the Jail
provide the inmates access to legal textbooks, caselaw books, statutory materials, writing room, a
Notary Public, or typewriters or computers to assist the inmate in the preparation of pretrial or
post-trial legal proceedings.

47.     There are a nurse and doctor who are responsible for the medical care of the
inmates.  However, treatment is given on a sporadic basis and the care is sometimes inadequate to

successfully treat the medical problem. No medical screening or examination is given to a person when he is committed to the Jail, nor is a physical examination given after the person has been in jail for an extended period of time. At no time since Crabbe became Sheriff has the Morgan County Health Department or any other medical personnel regularly examined each inmate admitted to the Jail for infectious diseases.

48.     There is no uniform system of record keeping for medical requests and/or dispensing drugs for inmates. Many of the jailers have not had first-aid training since being employed by Crabbe. During the Plaintiffs' incarceration in the Jail, inmates with serious medical problems such as tuberculosis have been mixed in with the general population and have not been treated. These, and other seriously ill persons, in some cases with communicable diseases, are kept in the general population of inmates. No medical screening or testing has been performed upon the Jail population.

49.     There is a work-release program at the Jail but it is inadequately supervised and there are no discernable standards for when an inmate qualifies for the work-release program. From appearance, the work-release program is controlled solely on the whim of the Sheriff, and denial of work release is routinely done without reference to any objective criteria or standard.

50.     Inmates at the Jail are not provided with nutritionally adequate food. All meals are prepared by inmates, and no food service personnel are employed by the Sheriff's Department. The inmate cooks have not been trained in hygienic food handling practices, and have never been treated for contagious diseases including AIDS, TB, and venereal disease. The meals are often served cold, and the inmates eat in their cells which, as described above, are unsanitary and filthy. The food is inadequate for the nutritional needs of the inmates and is unappetizing and unwhole-

11

some. No facility exists within the Jail where the inmates can eat their meals in comfort. Portions of food are often inadequate to satisfy hunger.

51.     The Defendant Commission has been repeatedly put on notice by the Sheriff and Grand Juries of Morgan County of the inadequate design, funding, and needs of the Jail and of the Sheriff's Department in operating, maintaining, and supervising the Jail as evidenced by the State Fire Marshall's Report of September 25, 2000; the Grand Jury Reports of March 8, 1996; May 22, 1998; November 20, 1998; December 18, 1998; February 4, 1999; June 24, 1999; September 17, 1999; June 15, 2000; September 15, 2000; and December 6, 2000; and the November 2000 Inspection Report of the Alabama Department of Corrections.

52.     The defendants Mike Haley, Steve Crabbe, and Larry Bennich received a letter dated January 19, 2001 from the Plaintiffs' attorney, John A. Russell, III, which letter outlined specific violations of the rights of inmates in the Morgan County Jail and demanded action to correct these deficiencies. A copy of this letter is attached hereto and incorporated by reference herein. The response of Chairman Bennich and Sheriff Crabbe was contained in a letter dated February 5, 2001, a copy of which is also attached. No response was received from Defendant Haley. See also Russell letter to Shinn dated February 7, 2001, a copy of which is attached. The Defendants have ignored the health, safety, and constitutional rights of the Plaintiffs and other members of the class. This trampling of the rights of the Plaintiffs and other members of the class has been wanton and/or intentional on the part of the County Commission, the Sheriff, and Commissioner Haley, and is without legal justification or excuse.

53.     The conditions of confinement and defendants' policies and practices in administering and overseeing the Jail, considered both discretely and in their totality, deprive plaintiffs and

12

all others similarly situated of the minimal civilized measure of life's necessities. Furthermore, the grossly inadequate medical care and lack of sufficient safety and security measures place inmates at substantial risk of serious harm.

54.    All defendants are and have for some time been aware of the inhumane conditions, practices, policies, and treatment described in this Complaint, as a result of official inspection reports of the Jail, complaints from inmates, the conspicuousness of such conditions, and a letter from plaintiffs' counsel dated January 19, 2001. Defendants have not taken adequate measures to remedy the Jail's deficiencies. Their failure to act constitutes deliberate indifference.

55.    Plaintiffs have exhausted the grievance procedure that has been made available to them at the Morgan County Jail during the past three weeks. Prior to this time, no grievance procedure was available to the majority of inmates at the Morgan County Jail, and grievance forms were rarely provided upon request. When inmates did obtain a grievance form, serious grievances were often denied because the inmate-grievant made a simple, technical error in filling out the form. Inmate handbooks were not regularly given to inmates, so the inmates had no way of knowing what the rules of the grievance procedure were or how to appeal if they were not satisfied with the resolution of their grievance.

56.    The grievance procedure that has been in place since the hearing before the Honorable U.W. Clemon on March 14, 2001, is deficient in numerous ways. The procedure is ambiguously worded so that most inmates cannot understand how to comply; the complaint form is confusing and does not provide spaces for all the required information (such as the social security number and "solution"); the deadlines for filing and appealing are unreasonably short; and the rules are applied erratically and new rules are made arbitrarily from one day to the next. For

13

example, grievances are denied for failure to use the proper ink, and inmates must now return their grievances during the same shift that they obtained the grievance form. There is no mechanism by which inmates can bypass the shift supervisor if their grievance concerns a sensitive issue such as guard brutality, and some inmates who have filed grievances on issues concerning fear of being assaulted by other inmates have had the content of their grievances shared with the potential assailants.

## VII. CAUSES OF ACTION

### Count I

57.    Incorporating by reference the factual allegations in paragraphs 32 through 56, the conditions of confinement at the Jail and defendants' deliberate indifference to those conditions, as well as their policies and practices in administering and overseeing the Jail, considered both discretely and in their totality, constitute cruel and unusual punishment in violation of plaintiffs' rights under the Eighth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

### Count II

57.    Incorporating by reference the factual allegations in paragraphs 32 through 56, the conditions of confinement at the Jail and defendants' deliberate indifference to those conditions, as well as their policies and practices in administering and overseeing the Jail, considered both discretely and in their totality, constitute a denial of due process in violation of plaintiffs' rights under the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983.

### Count III

58.    Incorporating by reference the factual allegations in paragraphs 44, 47-48, 50, defendants' deliberate indifference to plaintiffs' serious medical needs violates plaintiffs' rights under the Eighth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

### Count IV

59.    Incorporating by reference the factual allegations in paragraph 46, 55-56, defendants' refusal to allow plaintiffs meaningful access to the courts violates plaintiffs' rights under the First, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully pray that this Court:

1.    Assume jurisdiction over this action;

2.    Order that this case may be maintained as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

3.    Declare unconstitutional and unlawful the conditions of confinement and treatment of inmates at the Jail, as set forth in paragraphs 32 through 56;

4.    Enter a preliminary and permanent injunction requiring the defendants, their successors, agents, employees, and all persons acting in concert with them to take immediate steps to improve the conditions of confinement and treatment of inmates at the Jail, including but not limited to the following: removing inmates from sleeping on the floor and on tables; improving

15

sanitation, ventilation, lighting, fire safety and other physical conditions; providing an adequate number of trained staff to supervise inmates and respond to emergencies; providing inmates with a safe and secure environment; providing inmates with regular outdoor exercise; improve food service; provide adequate medical care; and providing adequate access to legal materials;

     5.     Award plaintiffs costs of this lawsuit and reasonable attorney's fees; and,

     6.     Order such additional relief as the Court may deem just and proper.  A proposed Preliminary Injunction Order is attached to this motion for the Court's convenience.

     Respectfully submitted this 4th day of April, 2001,


John A. Russell, III, Esq. *(with express permission by TMS)*
202 Broad Street
Aliceville, Alabama 35442
Telephone: (205) 373-8714
Facsimile: (205) 373-8894

Tamara H. Serwer, Esq.
Lisa Kung, Esq.
Stephen B. Bright, Esq.
Southern Center for Human Rights
83 Poplar Street, N.W.
Atlanta, Georgia  30303-2122
Telephone:  (404) 688-1202
Facsimile:  (404) 688-9440


*Attorneys for Plaintiffs*